## Blazer v. McCrery

Anthony W. D'Onofrio, for plaintiffs.

RILEY, J., February 17, 1967.—Plaintiffs, as owners of certain houses descending from a common title with defendants' property, filed a complaint in equity seeking to compel defendants to comply with a certain restriction imposed upon plaintiffs and defendants and other owners by the common predecessor in title. The complaint recites the derivation of title from the common predecessor, attached a copy of the deed containing the common restrictions and reciting the specific restriction sought to be enforced, namely, "No building exclusive of open porches and garages shall have less than 1400 square feet of livable space". Plaintiffs aver that defendants' house violates this restriction. Defendants admit all material averments save the violation. All parties concede that defendants' house, a ranch type, does not have 1,400 square feet on the first floor, but defendants contend their basement area, admittedly sufficient area to cover the restriction, is includible, and the issue becomes

the narrow one of whether the basement area in defendants' house is "livable space" within the meaning of the restriction in question.

## FINDINGS OF FACT

(a). Plaintiffs and defendants are owners of certain houses upon lots derived from a common title.

(b). In the deeds of plaintiffs and defendants appear common restrictions intended to bind them and other parties purchasing lots from the common title.

(c). Among these restrictions is one reading: "No buildings, exclusive of open porches and garages, shall have less than 1400 feet of livable space".

(d). Defendants' house is a ranch house with basement, the first floor area of which is approximately 1,120 square feet, but with the basement area included is well over 1,400 square feet.

(e). The plans for the house indicate a basement area partitioned and to contain a powder room, laundry, heating and storage facilities. In fact, when erected, the basement area was not partitioned, the walls are of concrete block, and the entrance, instead of a stairway from the kitchen, was altered to a stairway from the garage area immediately adjacent to and connected with the kitchen of the house. Heat comes from exposed heating pipes.

(f). In fact, the basement contains washing machines, laundry tubs, four chairs, several bar stools, two lights, two electric plug outlets, heater, oil tank and storage shelves. It has been used by defendants' children and grandchildren and other members of the family for such activities as weight lifting, making model airplanes and the like, mostly on weekends. The floor is concrete, with a water problem in rainy weather that defendants are seeking to correct.

(g). One of plaintiffs, Howard Keeley and wife, have but 1,200 feet in the first floor of their home, but have a second floor, unfinished, with bare studding and

no plaster, and with wallboard, but which someday is intended to be finished into two bedrooms and a bath.

(h). Defendants ultimately intend a partition in the basement area and a completion of the room as a finished game room type of facility.

## DISCUSSION

As indicated, the issue is a very narrow one centering about the meaning of "livable space" as applied to defendants' house and as intended in the restriction. Our first comment must be that the restriction is most inartfully drawn without contemplation of the numerous problems and ramifications involved in interpretation of its intendment. We might first note that the restriction does not designate "floor area", but refers to space. It does not delineate square or cubic feet. There is no definition of what is meant by "livable" space. Even the exclusionary clause relating to open porches and garages may be interpreted as being exempt from a requirement of 1,400 feet of living space, or as not being includible in computing the required space. The restriction does not designate any "house", but any "building", and the location and punctuation of the clause would indicate an intent to exclude "porches" and "garages" from the requirement of containing 1,400 feet. Plaintiffs contend common sense interpretation dictates otherwise. Some indication of the confusion of what is meant by "living space" is apparent in plaintiffs' contention that an unfinished second floor is "livable space", but an unfinished basement, perhaps used much more in connection with the occupancy of the premises as a residence, should not be considered "livable space", the only material distinction being one is above and the other below ground level.

To bolster their interpretation, plaintiffs offered an architect as an expert witness who, over defendants' objection, said that while "livable" had no specific

connotation in the architectural field, the term "habitable" did, and they, in his opinion, should be considered the same. When asked to relate that meaning, he stated that the State did not consider an area not having five feet above ground level "habitable" area. He also indicated good practice would dictate a certain number of electrical outlets, a degree, not specified, of dampness or absence thereof and, in our opinion, lent little help to solving the issue of what grantor and grantees intended in the use of the term "livable space" in the deed in question.

Lest we might overlook the ordinary and common meaning of the term, we examined the definition given by Webster and find that "livable" is: "Such as is pleasant, fit or suitable to live in or with; conducive to or implying comfortable living". And not to overlook "habitable", we found: "Capable of being inhabited; that may be inhabited or dwelt in; specifically a dwelling reasonably fit for occupation by a tenant of the class for which it was let or of a class ordinarily occupying such a dwelling". After contemplation upon these definitions and others in a similar vein, we still were in a quandary as to whether defendants' basement was "livable space". As a further indication of the uncertainties involved in the term, not so much as for the merit of his opinion but rather as an application of his statement as the acceptable meanings, we queried plaintiffs' expert as to whether in his espoused architectural standard closets were includible in "living space" or laundry rooms, recreation rooms and multiple other queries might be posed. We found no consistency in his application of the architectural interpretation of the phrase. We gathered that game rooms below ground level were not, but were if above; that closets were not, but laundry rooms were and that unfinished attics were not. Anyone experienced in the framing and interpretation of zoning ordinances is

quite well aware of the interpretative complexities arising from the application of the bare phrase "floor area". The same is true, multiplied many times, in attempting to apply the bare phrase "livable space".

In order for a restriction to be enforceable in equity, it must be expressed in clear and explicit language: McWilliams v. Luria, 407 Pa. 632. Covenants which are vague and uncertain may not be enforced in equity: Kessler v. Lower Merion Township School District, 346 Pa. 305; McCloskey v. Kirk, 243 Pa. 319. While a restriction was no doubt intended here, we must conclude that the language used is so broad and susceptible to so many interpretations that it must fall as being too vague and indefinite. We frankly do not know what the restricting and restricted parties meant to be encompassed under the heading or classification of "livable space". We have indicated the variety of constructions that might be applied to the term and even whether square or cube footage was intended. There is nothing in the evidence before us to clarify the intent of the parties or lend the words employed any definiteness of meaning.

Apart from the vague and indefinite wording, the clear rule of law applicable to restrictions is that they are not favored in the law and will be most strictly construed against the maker with every doubt and ambiguity in its language resolved in favor of the owner: Ratkovich v. Randell Homes Inc., 403 Pa. 63; Siciliano v. Misler, 399 Pa. 406; Culp v. Firestone Tire & Rubber Co., 303 Pa. 257; McCloskey v. Kirk, supra. Plaintiffs in the case before us had the burden of establishing the required clear meaning of the restriction sought to be enforced and its violation on the part of defendants: Witt v. Steinwehr Development Corporation, 400 Pa. 609. In the absence of any evidence to convince us of a meaning to the contrary, and we find none in the record before us, and construing

all doubts and ambiguities in favor of defendants, we must and do find the house erected by defendants to comply with the terms of the deed restriction in its broadest connotation. A laundry room, a game or family room is today a part of the residential use of a home, and we can find no distinction, expressed or implied, that it is not so merely because located below ground level or not as aesthetically decorated with wallboards and varied colored tile as some persons might prefer to their tastes.

### Conclusion of Law

Plaintiffs have failed to establish by good and sufficient evidence any violation of the restrictive covenant by defendants in their deed limiting "livable space" to 1,400 feet.

### Decree Nisi

Therefore, February 17, 1967, the complaint of plaintiffs seeking an injunction against defendants is hereby dismissed and an injunction is refused. If no exceptions are taken within 20 days of notice of the filing of this adjudication, this decree shall be final.